Eric H. Gibbs (SBN 178658)
ehg@classlawgroup.com
David Stein (SBN 257465)
ds@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:  (510) 350-9700
Facsimile:   (510) 350-9701

Adam J. Levitt (*pro hac vice* to be submitted)
alevitt@dicellolevitt.com
John E. Tangren (*pro hac vice* to be submitted)
jtangren@dicellolevitt.com
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone:  312-214-7900

W. Daniel "Dee" Miles, III (*pro hac vice* to be submitted)
Dee.Miles@BeasleyAllen.com
H. Clay Barnett, III (*pro hac vice* to be submitted)
Clay.Barnett@BeasleyAllen.com
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRELL JOHNSON, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>SUBARU OF AMERICA, INC. and SUBARU CORPORATION,<br><br>       Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT
CASE NO. _____

Plaintiff Gerrell Johnson ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as more fully defined below), brings this class action complaint against Defendants Subaru of American, Inc. and Subaru Corporation (collectively, "Subaru" or "Defendants").  Plaintiff makes the following allegations upon personal knowledge as to his own acts, and upon information and belief and the investigation of his attorneys as to all other matters, and alleges as follows:

## SUMMARY OF CASE

1.    Airbags are critical safety features that have been required in passenger vehicles for decades. When operating correctly, they reduce the risk of fatal injuries. But because airbags are dangerous to those under a certain size, Subaru and other automotive manufacturers are required to have systems that can activate and deactivate airbags depending on the passenger's size.

2.    In the early 2010s, Subaru introduced a new type of airbag system called a capacitance system.  Instead of using common weight sensors, the airbag system in the 2014-2018 Subaru Forester determines passenger size by sending a small amount of electrical charge through the seat and measuring how much charge that person can hold.

3.    But Subaru has known for years that its capacitance airbag system does not work reliably and often deactivates the front passenger airbag.  This means the airbag will not deploy in the event of an accident, significantly threatening passenger safety. The problem is also widespread—enough systems have failed that replacement parts are in backordered status, causing customers to wait months for supply. And it is also expensive to fix.  Because repair requires replacement of the entire passenger seat bottom, many drivers report having to pay almost a thousand dollars for the repair.

4.    Despite its awareness of the danger, Subaru, to this day, has not warned drivers about the risk that their airbags will not deploy, still sells the defective vehicles, and denies that a problem exists even after drivers experience it firsthand.

2

CLASS ACTION COMPLAINT
CASE NO. _____

5.      Subaru's conduct has needlessly endangered drivers and occupants, unjustly enriched Subaru at consumers' expense, and violated consumer protection and warranty laws.  On behalf of the classes he proposes to represent, Plaintiff seeks injunctive and other equitable relief.

## PARTIES

6.      Plaintiff Gerrell Johnson is a citizen and resident of Los Angeles, California, located in Los Angeles County.

7.      Defendant Subaru of America, Inc., is a New Jersey corporation with its headquarters and principal place of business in Camden, New Jersey.

8.      Defendant Subaru Corporation is a Japanese corporation and the parent company of Subaru of America, Inc.  The two defendants are referred to collectively in this complaint as Subaru.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Subaru and more than two-thirds of the proposed plaintiff class are citizens of different states.

10.      This Court may exercise jurisdiction over Subaru because it is registered to conduct business in California; it has sufficient minimum contacts in California; and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary.

11.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

CLASS ACTION COMPLAINT
CASE NO. _____

## SUBSTANTIVE ALLEGATIONS

12.     Subaru manufacturers, markets, and distributes automobiles in the United States under the Subaru brand name.  This lawsuit concerns 2014-2018 Subaru Foresters ("Class Vehicles").

### Airbag Systems

13.     Airbag systems are a crucial safety feature, designed to protect vehicle occupants during a collision.  During a collision, the airbag quickly inflates to form a gas-filled cushion and prevent impacts between passengers and the steering wheel, dashboard, or other parts of the interior.

14.     Airbags are installed in the vehicle interior in a folded and uninflated form. Frontal-impact airbags for the front-seat passenger are installed in the dashboard directly in front of the passenger seat.

15.     Federal law requires all modern consumer vehicles to come equipped with functioning airbags.  Because the impact of an inflating airbag, however, can cause fatal injuries to children and other passengers whose weight is under a certain threshold, federal law (and passenger safety) require that passenger vehicles' airbag systems (a) automatically deactivate the front passenger airbag if the passenger seat is occupied by a person whose weight does not meet a certain threshold; and (b) ensures activation of the front passenger airbag when a passenger who exceeds that threshold occupies the seat.  *See* Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208.

16.     To automatically deactivate and activate airbags as needed, modern airbag systems include occupant sensors for the front passenger seat, an electronic processor, software, and wiring, in addition to the airbags themselves.  Drivers and passengers cannot manually activate (or deactivate) passenger airbags.

### Subaru's Capacitance-Based Airbag System

17.     Beginning in the early 2010s, Subaru introduced a new system to activate and deactivate the passenger airbag.  Instead of commonly-used weight

4

CLASS ACTION COMPLAINT
CASE NO. _____

sensors, Subaru uses electrostatic capacitance sensors in the Class Vehicles (and other Subaru vehicles).

18.    Subaru's electrostatic capacitance sensors work by sending a small amount of electrical charge through the seat to determine the weight of the passenger (called capacitance).  A passenger's capacitance is determined by his or her mass.  The system can determine the size of the person occupying the seat and turn the airbag on or off accordingly.

19.    Subaru's airbag system has failed to work reliably for years.  As a result, the passenger airbags in Subaru vehicles have frequently been disarmed, meaning they would not reliably deploy in a collision.  For example, in a 2012 message concerning an older model, Subaru advised its dealers that "a false electrical charge, for example, those caused by laptops that are processing data [or] cellphones that are on" could cause the system to malfunction.  The same message also warns that moisture can cause the system to malfunction, including from cleaning the seat and getting in the car after being in the rain.  Similarly, Subaru notified dealers in December 2013 that the use of phone chargers or other power devices in the center power plug can cause "electrical or radio interference" with the airbag system. Drivers have also reported that the system doesn't work if someone places a pillow or seat cushion in the passenger seat.

20.    As with these older Subaru models, the airbag system in the Class Vehicles works only intermittently, and the passenger airbags do not reliably deploy as intended or when needed.  Because the problem is intermittent, the airbag system may activate some days and not others, and the system will deactivate while under way.  Hence, Class Vehicle drivers can never be sure when their airbags will work.

21.    Even when drivers discover the problem and seek repairs, Subaru provides no reliable assistance.  Frequently, Subaru dealerships tell drivers that no repair is available and deny there is a problem.  Even when the dealerships agree to provide repairs, since the capacitance sensor is located in the passenger seat, the

CLASS ACTION COMPLAINT
CASE NO. _____

typical repair involves replacing the entire bottom portion of the passenger seat, which can cost nearly one thousand dollars. Even after paying for that expensive repair, Class Vehicle drivers report continued problems with their passenger airbags disarming, just as they had experienced before repair.

22.   Below are just a few examples of driver complaints submitted by Class Vehicle owners and lessees to the National Highway Traffic Safety Administration (NHTSA). (Many drivers do not know to complain to the NHTSA about vehicle problems, so it is highly likely that Subaru has received far more complaints through its dealerships and customer service telephone number—but those complaints are known only to Subaru at this point; they are not publicly available.) As several of the below complaints reflect,[1] so many Class Vehicles have experienced airbag system problems that Subaru has not been able to meet the demand for replacement parts, as the parts hit backorder status:

2014 Subaru Forester: While driving my car on the highway, (approximate 65 mph) I got a message on the console that indicated that SRS system had shut down and the red air bag light went on. I drove it home and then turned the car off. When I restarted it, the red air bag light went away. The next day while I was riding on the passenger side, the red airbag light went off and a note on the console said that the front passenger side airbag was not operational. I took the vehicle to the Subaru dealer who could not recreate the issue and turned the car back to us. *TR
(NHTSA ID 10712377; Date Complaint Filed: 04/23/2015)

2014 Subaru Forester: This Subaru occupant detection system in my 2014 Forester is defective. It does not detect my wife and the passenger air bag does not turn on. We have been told by Subaru that they have recently changed to an "electrostatic capacitance sensor" to replace the previous "weight sensor". My wife needs to sit on a seat cushion as the seats are too hard for her medical condition. Subaru told us the seat

---

[1] All consumer complaints are reproduced below verbatim, with no modifications or typographical corrections.

CLASS ACTION COMPLAINT
CASE NO. _____

cushion will not allow the ODS to verify a person is sitting in the seat and will not turn on the passenger airbag. I also discovered that wet clothing (wet raincoat) will also defeat the sensor and the airbag will not be turned on. This is totally unacceptable and dangerous to all passengers. The only suggestion from Subaru was for my wife to sit in the back seat. Subaru customer service advised me that your department is mandating that all vehicles use this electrostatic capacitance sensor. I strongly urge your department to reconsider mandating this sensor as the old "weight sensor " in my 2011 Outback works just fine with a cushion.
(NHTSA ID 10724973; Date Complaint Filed: 06/12/2015)

2017 Subaru Forester: SRS airbag system needs to be checked light is on and passage air bag off indicator shows off. The dealership ordered replacement part which has been on back order since Sept. 9, 2017. Problem started in Sept.. 2017, occasionally when a passenger was in the front seat and vehicle hit a bump, the SRS showed warning indicator and passenger airbag turned off. System would reset when vehicle was restarted, but would occasionally duplicate the problem. Took vehicle to dealership on Sept. 9, they said they ordered part and would call me when part arrived. I didn't hear back from dealership, so called them on Oct. 26. They said part would be in and I dropped vehicle off for scheduled service for Oct. 31. On Nov. 3 after not hearing from dealer, I called to see why service not completed yet, and was told part was still on back order, should be in sometime in Dec. The SRS airbag system worked fine and no problem until the end of Feb, 2018. The random SRS warning indicator when passenger was in the front seat and hitting a bump started reoccurring again. I have called the dealership again numerous times, and part is still on backorder. Now the SRS airbag system needs to be check indicator is on all the time, regardless if a passenger is in the seat or not. I called the dealership on April 24 and they were going to escalate the part order and get back to me. As of May 2 I have not heard back, and SRS airbag system is not working.
(NHTSA ID 11091464; Date Complaint Filed: 05/02/2018)

2017 Subaru Forester: There is an intermittent problem where the passenger air bag is disabled. I have had the dealership look at the problem and they claim Subaru knows about it and it is caused by a sensor getting wet in some fashion. The front passenger seat is never wet when the problem occurs. Most recently, today, June 10th 2018 the

7

CLASS ACTION COMPLAINT
CASE NO. _____

front passenger airbag disabled light came on while driving in dry conditions and no beverage or moisture of any kind was in the car. This is always the case. After I park the car, turn it off, have the passenger exit the vehicle and get back in the system is fine again. I find it incredulous that I have a 16 month old car that this happens repeatedly in. I have made the dealer aware twice and they simply list my Subaru maintenance records as routine and never show the detailed reason my car was taken in. I am afraid there will come a time when the system will stay disabled and I will have to have my wife ride in the back seat. The problem is there are only 2 of us in our family and I sometimes have the rear seats folded down and the cargo area is full. There would be no safe place left for her to be seated in the vehicle. If the NHTSA requires airbags it should require the manufacturer to make sure the system is not defective. I have the Subaru Starlink system and received an email today that they were notified of the airbag system issue. The vehicle is always in motion when this occurs and is either on a city street or highway. It has occurred no less than 8 times and the dealership has been made aware twice prior to today.
(NHTSA ID 11100798; Date Complaint Filed: 06/10/2018)

2017 Subaru Forester: Passenger air bag light remains off when passenger seat is occupied, or turns off after seat has been occupied for several minutes. This results in SRS airbag error light on dash illuminating. Dealer claims "seat was wet" and it will resolve itself when seat is dry. Seat has never been wet - no spills, no wet swimsuits, nothing. Problem started intermittently 1-2 months ago and now occurs nearly every time car is started. Dealer "fixed" before 500 mile interstate trip only to have problem return mid-trip.
(NHTSA ID 11110323; Date Complaint Filed: 07/09/2018)

2017 Subaru Forester: 29 June wife and I are on the highway driving when the passenger airbag light goes to off and the fault code appears on the heads up display tell us to take into service immediately. Well we car off and we don't hear anything back for a few days. We called them back on the 5th of Huly because of the holliday. They told my wife on the phone they were going to replace seat cushion because that seemed to be the issue. Fast forward to 9 July my wife recieves a call telling her the car is ready for pickup. My wife asks what did you end up doing to the vehicle? He said we functional tested the seat it's good to go. So I call the service department and speak to the service manager. I said so

8

CLASS ACTION COMPLAINT
CASE NO. _____

let me get this staight you had our car for 10 days and you did a test and hand my wife back the keys? Where is the new seat cushion? He said to me sir I want to help you but corporate won't release the parts they instructed me to do the functional check and if it passed they would not release the parts. So I ask what if it happens again what then? Well sir we would need to submit the service history problem with the next request to escalate the issue. So I call the wife tell her to go pick up the car but ask the service manager to take a little ride in the passenger seat to ensure it works.... So my wife starts the car then goes at sits in the passenger seat. Boom air bag fault light come on immediately with the service manager standing there. Service manager turns red. My wife's smiles and says I can't take this car home it's not safe. So they keep the car to try and order the seat cushion again. The service maanger call me back to (10 July) to let me know they hack escalated the problem to Subaru corporate and the cushion is now on order. However turns out 73 cushoins are on back order for pretty much the same issue. This may require a recall.
(NHTSA ID 11110572; Date Complaint Filed: 07/10/2018)

<u>2017 Subaru Forester</u>: The passenger airbag will stop working while the passenger is seated in the front passenger seat. Two alerts show up in different areas on the dash lights indicating a problem with the passenger air bag advising to have it check immediately by the dealer. When I took the vehicle to the dealer they first advised me that the airbag light was do to the seat being wet, placing a cell phone or lap top on the seat. None of those things have caused the malfunction light to go on in my vehicle. The light would randomly come on advising me that the passenger seat airbag was not on. When this occurred the vehicle was in motion every time. The dealer claimed that my problem was caused by a stain on my seat, they claimed the mechanic cleaned the seat and they were going to release the vehicle to me. I insisted however that my seat was never wet nor stained. The service advisor then spoke to a manager and they then informed me that the problem was the airbag sensor in the seat. They said it would take 2 days to get the part. Two days later they told me it was a national back order on the part. My vehicle has been at the dealer since 09/11/2018 and I am still waiting for the part which they keep calling me and telling me it is on backorder. They have provided me with a loaner. Corporate Subaru personnel have also contacted me concerned about this issue. As of today 10/18/18 Subaru as not corrected the issue

9

CLASS ACTION COMPLAINT
CASE NO. _____

(NHTSA ID 11141206; date complaint filed: 10/18/2018)

2016 Subaru Forester: Passenger detection system to turn on airbag has been intermittent since shortly after purchasing. Will turn off passenger air bag with an adult present in the seat, or not turn it on initially. Now it is almost always off at some point in a driving experience. Several attempts to get it checked out were made but required too long and no loaner was available. After getting a second car, it was taken to the dealer where it was purchased be tested October 2, 2018 and parts were ordered. When I tried to find when the part may come in after about 2 weeks, no information was available. The system acknowledges the presence of a passenger because it gives a warning on the display that it needs service but it leaves airbag off anyway. I believe it has been too long waiting for parts for a safety system problem. This has obviously been a known issue for several model years according to complaints to NHTSA and on Subaru owner's forums.
(NHTSA ID 11150824; Date Complaint Filed: 11/11/2018)

2018 Subaru Forester: My 2018 Subaru Forester is experiencing faulty activation of the passenger seat air bag light since June 2018. Vehicle was purchased new in August 2017. The dashboard reads that there is no airbag on for the passenger while someone was seated there and the car was sitting or in motion. This has happened on and off since June 2018. The light reads periodically that none of the airbags are on. After bringing it to my Subaru dealer in August 2018, I was told that a part would be ordered and that it was the passenger seat cushion that needed replaced. After waiting a month, I contacted the dealership and they stated that Subaru has to create and manufacture this seat cushion still, and they had no idea when this would be done. I have been unable to drive my Forester for almost 6 months now due to the safety issues of driving without the guarantee of airbags deploying. The dealership has no answer as to when Subaru will even start creating this new part. I am surprised it is not a recall since it is an airbag issue, and the dealership stated they had at least 7 other customers currently with the same issue. I have now been without my new vehicle and driving a loaner car from the dealer. There seems to be no end in sight as to when this issue will be fixed or even addressed by Subaru.
(NHTSA ID 11166156; Date Complaint Filed: 01/09/2019)

CLASS ACTION COMPLAINT
CASE NO. _____

<u>2015 Subaru Forester</u>: The passenger airbag warning light first came on as soon as I started my car one morning in mid-October 2018, in which I took my car to Subaru of Kennesaw, GA to have it looked at. They first asked if I had spilled anything on the front seat (in which I responded "no") and then advised me that the whole seat bottom would need to be replaced (about $989 parts and labor) and that the part was on back-order. I followed-up with them in December 2018 and never heard back. When I recently went there for an oil change February 18, 2019 they brought the issue up to me again, in which I responded that nobody ever returned my call. They checked again to see if they had the part but stated it is still on a nationwide back-order. We are now going on 5+ months of my passenger airbag warning light being on (it sometimes turns off intermittently, but in those instances the passenger seatbelt light will come on and ding repeatedly until the seatbelt is plugged in - even if there is no passenger). I have done quite a bit of research into this issue and it seems like a lot of other consumers are experiencing similar issues. Subaru seems to have different explanations and seems very unwilling to fix their faulty passenger seat sensors. It is upsetting and discouraging to know that they have allowed me to drive around this long with a defective airbag/passenger seat sensor. (NHTSA ID 11182111; Date Complaint Filed: 02/23/2019)

<u>2017 Forester</u>: 2017 Forester SRS airbag sensor defective two years after purchase, the SRS airbag warning light appeared. This light flickers on and off, at random, whether or not a passenger is in the seat. (no passenger will be driving with me until this is repaired.) My Subaru dealership service manager told me that there was a recall (he misspoke, perhaps he meant "should be") and said that he "sees this all the time". He immediately knew (prior to testing it) that they would be replacing the passenger seat bottom, for a new sensor pad. He said they are usually backordered. Backordered indicates to me that there is a high demand to correct this error in this critical safety system. At this point, I have Subaru corporate involved; I've emailed and spoken at length with Kris Drechsel, a supervisor in customer service, and Charles Hosier, a customer service advocate. While they both were superb in their interactions with me, I learned nothing about what Subaru is doing or intends to do about this reprehensible situation, other than pass along my complaint. I was emailed that they are "not aware of any trending issue with the passenger side seat sensor". Subaru is clearly aware there is a problem and is neglectful in not being fully transparent with owners

11

that there is the potential that an airbag may not deploy in a collision due to this sensor defect. Subaru noted that they rely on customer feedback and that the appropriate protocol will be followed for such complaints. Considering the gravity of this issue, I assume, then, that I am the only customer who has provided this complaint and that they are now going to discover the "trend" and provide notice of this SRS airbag defect to the public. There are 25 complaints on this site alone (of how many that "may appear"?), countless online forums, and apparently law suits pending. Is a death what's prerequisite here? (NHTSA ID 11208734; Date Complaint Filed: 05/20/2019)

**Subaru's Unsuccessful Efforts to Resolve the Defect**

23.     As described above, Subaru has repeatedly identified the problem, but has failed to resolve it.

24.     In May 2012, Subaru issued a service bulletin to its dealers about capacitance-based airbag system in its newly released 2012 Subaru Impreza. According to the service bulletin, the airbag system malfunctioned in a range of scenarios.  The passenger side airbag would disarm when luggage or electronic devices were placed on the passenger seat.  It would disarm if the passenger seat became damp.  And it would even disarm when passengers adjusted the position of their seat.  In response, Subaru developed and installed a purportedly less sensitive mass sensor.

25.     The same problem persisted in Subaru vehicles, however, and, three years later, the NHTSA launched an investigation after receiving over twenty reports that the airbag system "failed to operate properly and incorrectly suppressed (turned off) the front passenger airbag when the seat was occupied."  After learning of the regulatory investigation, in June 2015 Subaru initiated a safety recall of the 2012 Impreza and replaced part of the airbag system (the occupant control unit). Subaru acknowledged the problem could cause the passenger airbag deactivation, leading to personal injury in the event of a crash.

26.     Two years later, it was clear that other Subaru vehicles still suffered the same problem.  In December 2017, Subaru issued a bulletin to its dealers to assist

CLASS ACTION COMPLAINT
CASE NO. _____

them in diagnosing airbag system problems in 2014-2018 Subaru Foresters, the Class Vehicles in this case. The bulletin instructs dealers to perform a "revised troubleshooting procedure" to diagnose airbag sensor system problems and avoid "unnecessary" repairs. Subaru again identified a "temporarily" wet seat cushion as a reason for sensor malfunctions.   The bulletin advises technicians to attempt to dry the seat cushion in an effort to avoid replacing it and to check all system connections.

### Subaru's Concealment of the Defect and Its Refusal to Warn Drivers

27.     Even though Subaru has faced persistent airbag system failures for years, which have plagued the passenger side airbag in particular by disarming it even when needed for passenger safety, Subaru has continued to sell and lease defective vehicles without warning prospective customers.

28.     In addition to the history of problems recounted above, the speed and frequency with which the airbag sensor systems in Class Vehicles fail also makes it all but certain that Subaru knew of the defect before selling and leasing the first Class Vehicles.

29.     For many decades, Subaru has conducted durability and reliability testing of new vehicles before introducing them to market.  This means that Subaru automobiles, including Class Vehicles, are exposed to lengthy and comprehensive physical testing that reveals how the vehicles and their component parts and systems (including the airbag system) will perform over the span of many miles of driving.

30.     Subaru maintains a research center in Hokkaido, Japan, where it conducts performance evaluations of all its vehicles, including real-world testing in environments designed to simulate actual public roads.  For example, the Bifuka Proving Ground is a test track specifically established to permit for cold climate evaluation, including driving in snowy environments and exposure to precipitation.

31.     As driver complaints to the NHTSA show, the "Passenger Airbag Off" indicators in Class Vehicles often illuminate within a few months of entering service,

CLASS ACTION COMPLAINT
CASE NO. _____

including when moisture is introduced to the passenger cabin.  It would thus be nearly impossible for Subaru to fail to discover the defect through its pre-release testing efforts (the results of which are exclusively within Subaru's control).

32.     Also, once sales of a vehicle model begin, Subaru monitors complaints to NHTSA in the regular course of its business to evaluate potential defects.  As the excerpted NHTSA complaints above reflect, Class Vehicle drivers have complained since mid-2015—often shortly after introduction of a new model year.

33.     Subaru also receives several additional sources of aggregate data (all of which are in Subaru's exclusive control).  These data sources include warranty claims information, driver complaints, new vehicle purchaser survey responses, field reports by Subaru-employed engineers called out to evaluate problems in the field and other such data.  Subaru begins reviewing this data as soon as its models are introduced and monitors it continuously as part of ongoing quality control efforts.

34.     Subaru has concealed its knowledge of the airbag system defect even though automotive manufacturers, NHTSA, and Subaru itself have long recognized that defective airbag systems pose unreasonable safety hazards.  As discussed, Subaru once conducted a safety recall due to malfunctioning capacitance-based airbag systems, acknowledging the failures meant "the air bag will not deploy, increasing the risk of injury to a front passenger in the event of a crash." Likewise Nissan, Volkswagen, Hyundai, and BMW have all have conducted safety recalls to address similar defects.  For example, Nissan recalled 2014 and 2016 models finding that "the Occupant Classification System (OCS) [may] initially classify an adult passenger as a child or classify an occupied seat as an 'empty seat' . . . . this issue may cause the passenger airbag not to deploy as designed in a crash, increasing the risk of injury to the front passenger seat occupant."[2]  Volkswagen recalled several Audi models with malfunctioning airbag systems that caused "illumination of the

---

[2] https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V244-9898.PDF

CLASS ACTION COMPLAINT
CASE NO. _____

airbag monitoring light and . . . the Passenger Airbag OFF indicator light."[3]
According to Volkswagen, "[i]n this situation, a front passenger seat occupant risks
injury in a crash." *Id.*

35.     Yet Subaru has initiated no recall for Class Vehicles.  Instead, Subaru
continues to conceal the problem from owners, lessees, and potential customers
alike.  Subaru has not warned consumers at the point of sale or lease—nor has it
instructed its dealerships to do so—and it has made no effort to alert drivers to the
risk.

36.     As a result, drivers are unaware that they are operating unsafe vehicles
and consumers are deprived of the right to make informed purchasing decisions
taking into account the available information about the defect. As Subaru knows,
the defect is not reasonably discoverable by consumers unless they experience it
firsthand and are thus exposed to the safety risks.

37.     Given the severity and safety risks posed by the defective airbag system,
Subaru should not have sold or leased to Plaintiff and the other Class members their
vehicles or it should have prominently disclosed—both in a written disclosure to be
acknowledged in writing by Plaintiff and the other Class members and through an
oral disclosure to be given by Subaru's authorized dealerships—that the vehicles'
airbag systems are defective and may malfunction such that the passenger airbag
will not deploy in a collision.

### PLAINTIFF'S EXPERIENCE

### Gerrell Johnson

38.     Plaintiff Gerrell Johnson purchased a new 2017 Subaru Forester in or
about March 2016 from Subaru of the Pacific, an authorized Subaru dealership
located in Hawthorne, California.  Mr. Johnson researched the vehicle online,
including on Subaru's website, and also spoke with dealership personnel about the
vehicle before making his purchase.

---

[3] https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V370-1548.PDF

CLASS ACTION COMPLAINT
CASE NO. _____

39.     Soon after purchase, the airbag warning lights in Mr. Johnson's Forester began to illuminate intermittently and warn "Passenger Airbag Off" even when there is an occupant in the front passenger seat.

40.     Had Subaru adequately disclosed the defect. Mr. Johnson would not have purchased his vehicle or would have paid substantially less for it.

### CLASS ACTION ALLEGATIONS

41.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed classes.

Nationwide Class

*All persons who purchased or leased a 2014-2018 Subaru Forester in the United States.*

California Class

*All persons who purchased or leased a Class Vehicle in California.*

42.     Excluded from the proposed classes are Subaru; any affiliate, parent, or subsidiary of Subaru; any entity in which Subaru has a controlling interest; any officer, director, or employee of Subaru; any successor or assign of Subaru; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose of resale.

43.     The above proposed class definitions suffice because they use objective characteristics; class membership turns on objective criteria including whether someone bought or leased a Class in a particular state.  Documents identifying who purchased and leased Class Vehicles, and where, are in Defendants' possession, custody, and control.

44.     **Numerosity**. Subaru sold many thousands of Class Vehicles, including a substantial number in California.  Members of the proposed classes likely number in the thousands and are thus too numerous to practically join in a single action.  Class members may be notified of the pendency of this action by mail, supplemented by

CLASS ACTION COMPLAINT
CASE NO. _____

1  published notice (if deemed necessary or appropriate by the Court).

2       45. **Commonality and Predominance**. Common questions of law and fact

3  exist as to all proposed members of the classes and predominate over questions

4  affecting only individual class members.  These common questions include:

5      a.    Whether Subaru knew or should have known of the defect, and if so,

6          when it discovered this;

7      b.    Whether the existence of the defect is material because, among other

8          things, it poses an unreasonable safety hazard and impacts the central

9          functionality of Class Vehicles;

10      c.    Whether Subaru failed to disclose and actively concealed the existence

11          of the defect from potential customers;

12      d.    Whether the Court may enter appropriate injunctive relief, including by

13          requiring Subaru to notify owners and lessees about the defect and to

14          provide free repairs to remedy it;

15      e.    Whether Subaru's conduct, as alleged herein, violates the consumer

16          protection laws of California;

17      f.    Whether Subaru has breached its implied warranty obligations; and

18      g.    Whether Subaru's conduct, as alleged herein, entitles Plaintiff and the

19          proposed class he represents to restitution.

20       46. **Typicality**.  Plaintiff's claims are typical of the claims of the proposed

21  classes.  Plaintiff and the members of the proposed classes all purchased or leased

22  Class Vehicles with the same defect, giving rise to substantially the same claims.  As

23  illustrated by class member complaints, some of which have been excerpted above,

24  each vehicle model included in the proposed class definitions has suffered from the

25  same defect that Plaintiff is complaining about.

26       47. **Adequacy**.  Plaintiff is an adequate representative of the proposed

27  classes because his interest does not conflict with the interests of the members of the

28  classes he seeks to represent.  Plaintiff has retained counsel who are competent and

CLASS ACTION COMPLAINT
CASE NO. _____

experienced in complex class action litigation, and who will prosecute this action vigorously on class members' behalf.

48. **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Subaru economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

49. In the alternative, the proposed classes may be certified because:

a. the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Subaru;

b. the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c. Subaru has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

CLASS ACTION COMPLAINT
CASE NO. _____

### TOLLING OF STATUTES OF LIMITATIONS

50. **Discovery Rule**. Plaintiff's and the other Class members' claims accrued upon discovery that their Class Vehicles were sold and leased with a known defect. While Subaru knew about, and concealed, the defect, Plaintiff and the other Class members could not and did not discover this fact through reasonable diligent investigation until after they experienced it and learned that the problem was not isolated to their vehicles.

51. **Active Concealment Tolling**. Any statutes of limitations are tolled by Subaru's knowing and active concealment of the fact that Class Vehicles suffer from an inherent defect.  Subaru kept Plaintiff and each of the other Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff or the other Class members.  The details of Subaru's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and the other Class members, and await discovery. Plaintiff and the other Class members could not reasonably have discovered the defect on his own.

52. **Estoppel**. Subaru was and is under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the Class Vehicles.  At all relevant times, and continuing to this day, Subaru knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Class Vehicles.  The details of Subaru's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and the other Class members, and await discovery.  Plaintiff and the other Class members reasonably relied upon Subaru's active concealment.  Based on the foregoing, Subaru is estopped from relying upon any statutes of limitation in defense of this action.

53. **Equitable Tolling**.  Subaru took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed,

distributed, sold, and leased Class Vehicles with a known defect.  The details of Subaru's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and the other Class members, and await discovery.  When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Subaru fraudulently concealed its above-described wrongful acts.  Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CLAIMS ALLEGED

### FIRST CAUSE OF ACTION

**Unlawful, Unfair, and Fraudulent Business Practices,**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**(Plaintiff on behalf of the proposed California Class)**

54.     Plaintiff realleges Paragraphs 1-53, above, as if fully set forth herein.

55.     Subaru has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

56.     Subaru's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law.  In particular, Subaru sold vehicles to Plaintiff and the other California Class members despite knowing of a safety defect in the vehicles, failing to disclose its knowledge of the defect and its attendant risks at the point of sale or otherwise.

57.     Subaru's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, and the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Cal. Civ. Code § 1790, *et seq.*, for the reasons set forth below

58.     Subaru's acts and practices also constitute fraudulent practices in that

20

CLASS ACTION COMPLAINT
CASE NO. _____

they are likely to deceive a reasonable consumer.  As described above, Subaru knowingly conceals and fails to disclose at the point of sale and otherwise that Class Vehicles have a defect, endangering the personal safety of drivers and passengers and detracting from the central functionality of the vehicles.  As Subaru knew, had it disclosed this fact, Plaintiff, the other California Class members, and reasonable consumers would not have purchased Class Vehicles or would have paid significantly less for them, and Subaru thus concealed the defect with the intent to profit from its nondisclosure.  Furthermore, Subaru claims to be unable or unwilling to adequately repair the vehicles so as to eliminate the defect.

59.    Subaru's conduct also constitutes unfair business practices for at least the following reasons:

a.    The gravity of harm to Plaintiff and the proposed California Class from Subaru's acts and practices far outweighs any legitimate utility of that conduct;

b.    Subaru's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the other members of the proposed California Class; and

c.    Subaru's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

60.    As a direct and proximate result of Subaru's business practices, Plaintiff and the other California Class members suffered injury in fact and lost money or property, because they purchased and paid for vehicles that they otherwise would not have, or in the alternative, would have paid less for.

61.    Plaintiff and the other California Class members are entitled to restitution, injunctive relief (including an order directing Subaru to disclose the

CLASS ACTION COMPLAINT
CASE NO. _____

existence of the defect and to provide free repairs), and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**Violation of the Consumers Legal Remedies Act,**

**Cal. Civ. Code § 1750,** *et seq.*

**(Plaintiff on behalf of the proposed California Class)**

62.    Plaintiff realleges Paragraphs 1-53, above, as if fully set forth herein.

63.    Subaru is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

64.    Plaintiff and the other California Class members are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and each has engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

65.    Subaru's acts and practices, which were intended to result—and which did result—in the sale of defective Class Vehicles, violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

a.    Subaru represents that its vehicles had characteristics, uses, or benefits which they do not have;

b.    Subaru advertises its goods with intent not to sell them as advertised;

c.    Subaru represents that its vehicles are of a particular standard, quality, or grade when they are not;

d.    Subaru represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

e.    Subaru represents that its goods have been supplied in accordance with a previous representation when they have not.

66.    As described above, Subaru sold and leased vehicles to Plaintiff and the other California Class members with a known defect that endangers drivers and materially detracts from the central functionality of the vehicles.  Subaru failed to

22

CLASS ACTION COMPLAINT

CASE NO. _____

1  disclose its knowledge of the defect and its attendant risks at the point of sale or

2  otherwise, realizing that warning about the defect would dissuade Plaintiff and the

3  other California Class members from purchasing and leading the vehicles.

4  Furthermore, Subaru claims to be unable or unwilling to adequately repair the

5  vehicles so as to eliminate the defect.

6     67.   Had Subaru not concealed and instead adequately disclosed the defect,

7  Plaintiff, the other California Class members, and reasonable consumers would not

8  have purchased or would have paid less for their vehicles.

9     68.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff has

10  already or will promptly likewise send a notice letter to Subaru.

11    69.   Pursuant to California Civil Code § 1780, Plaintiff, individually and on

12  behalf of the other California Class members, seeks appropriate injunctive relief,

13  including an order enjoining Subaru from the unlawful practices described above, a

14  declaration that Subaru's conduct violates the Consumers Legal Remedies Act, and

15  reimbursement of his reasonable attorney's fees and costs.

16            ### THIRD CAUSE OF ACTION

17        **Violation of Song-Beverly Consumer Warranty Act**

18    **for Breach of Implied Warranty, Cal. Civ. Code § 1790, *et seq.***

19        **(Plaintiff on behalf of the proposed California Class)**

20    70.   Plaintiff realleges Paragraphs 1-53, above, as if fully set forth herein.

21    71.   Class Vehicles are "consumer goods" and Plaintiff and the other

22  California Class members are "buyers" within the meaning of Cal. Civ. Code §

23  1791.  Subaru is also a "manufacturer," "distributor," or "retail seller" under Cal.

24  Civ. Code § 1791.

25    72.   The implied warranty of merchantability included with the sale of each

26  Class Vehicle means that Subaru warranted that each Class Vehicle (a) would pass

27  without objection in trade under the contract description; (b) was fit for the ordinary

28  purposes for which the Class Vehicle would be used; and (c) conformed to the

1   promises or affirmations of fact made on the container or label.

2       73.   The Class Vehicles would not pass without objection in the automotive

3   trade because they contain the above-described defect, which also makes them unfit

4   for the ordinary purpose for which a Class Vehicle would be used.

5       74.   The Class Vehicles are not adequately labeled because their labeling

6   fails to disclose the defect and does not advise the members of the proposed

7   California Class of the existence of the danger prior to experiencing failure firsthand.

8       75.   Subaru's actions have deprived Plaintiff and the other California Class

9   members of the benefit of their bargains and have caused Class Vehicles to be worth

10  less than what Plaintiff and the other California Class members paid.

11      76.   As a direct and proximate result of Subaru's breach of implied warranty,

12  Plaintiff and the other California Class members received goods whose condition

13  substantially impairs their value.  Plaintiff and the other California Class members

14  have been damaged by the diminished value of their Class Vehicles.

15      77.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and the other

16  California Class members are entitled to damages and other legal and equitable

17  relief, including, at their election, the right to revoke acceptance of Class Vehicles or

18  the overpayment or diminution in value of their Class Vehicles.  They are also

19  entitled to all incidental and consequential damages resulting from Subaru's breach,

20  as well as reasonable attorneys' fees and costs.

21              **FOURTH CAUSE OF ACTION**

22              **Unjust Enrichment**

23      **(Plaintiff on behalf of the proposed Nationwide Class)**

24      78.   Plaintiff realleges Paragraphs 1-53, above, as if fully set forth herein.

25      79.   As described above, Subaru sold or leased Class Vehicles to Plaintiff and

26  the other Class members, even though the vehicles are defective and pose a safety

27  hazard, and Subaru failed to disclose its knowledge of the defect and its attendant

28

risks at the point of sale or otherwise.  Furthermore, Subaru claims to be unable or unwilling to adequately repair the vehicles so as to eliminate the defect.

80.  As a result of its fraudulent acts and omissions related to the defect, Subaru charged Plaintiff and the other Class members more than it otherwise could have for Class Vehicles, obtaining monies which rightfully belong to Plaintiff and the other Class members, to Plaintiff's and the other Class members' detriment.

81.  Subaru appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the other Class members, who, without knowledge of the defect, paid a higher price for their vehicles than those vehicles were worth.

82.  It would be inequitable and unjust for Subaru to retain these wrongfully obtained funds.

83.  Subaru's retention of these wrongfully-obtained funds would violate the fundamental principles of justice, equity, and good conscience.

84.  Plaintiff and the other Class members are entitled to restitution of the funds Subaru unjustly obtained as a result of the conduct alleged herein, plus interest.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Nationwide and California Classes, requests that the Court enter a judgment awarding the following relief:

a.  An order certifying the proposed Nationwide and California classes, and appointing Plaintiff's counsel as Class Counsel;

b.  An order awarding Plaintiff and the other Nationwide and California Class members classes restitution, disgorgement, or other equitable relief as the Court deems proper;

c.  An order requiring Subaru to adequately disclose and repair the defect;

      d.      An order awarding Plaintiff and the other Nationwide and California Class members pre-judgment and post-judgment interest as allowed under the law;

      e.      An order awarding Plaintiff and the other Nationwide and California Class members reasonable attorneys' fees and costs of suit, including expert witness fees; and

      f.      An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so triable under the law.

DATED: June 28, 2019           Respectfully submitted,

                      **GIBBS LAW GROUP LLP**

                      By:   */s/ Eric H. Gibbs*

                      Eric H. Gibbs (SBN 178659)
                      David Stein (SBN 257465)
                      Steven Lopez (SBN 300540)
                      505 14th Street, Suite 1110
                      Oakland, California 94612
                      Telephone:  (510) 350-9700
                      Facsimile:   (510) 350-9701
                      ehg@classlawgroup.com
                      ds@classlawgroup.com
                      sal@classlawgroup.com

                      Adam J. Levitt*
                      John E. Tangren*
                      Daniel R. Ferri*
                      **DICELLO LEVITT GUTZLER LLC**
                      Ten North Dearborn Street, Eleventh Floor

26

CLASS ACTION COMPLAINT
CASE NO. _____

Chicago, Illinois 60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

W. Daniel "Dee" Miles, III*
H. Clay Barnett, III*
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@BeasleyAllen.com
Clay.Barnett@BeasleyAllen.com

* *Pro hac vice* application to be submitted

*Attorneys for Plaintiff*

27

CLASS ACTION COMPLAINT
CASE NO. _____